carpeting was folded and pressed by a power press in the bales in so close a manner, that unless the leakage was to a very extraordinary extent, the oil never could have penetrated farther than through the external folds or than through the mere edges of the bales; whereas in fact it penetrated or was absorbed through the edges of every successive fold of the carpeting (the bales of carpeting being stowed on their ends) to the depth of from six to eighteen inches. This circumstance demonstrates, not only, that the leakage was very great, but, that the carpeting was exposed to the action of the oil for a considerable length of time.

Upon the whole, after examining the testimony, I am fully satisfied, that the injury did not arise from the dangers of the seas, properly so called, but from the oil not being properly coopered and shipped in good order; and, therefore, the libellants have maintained their libel; and the decree of the district court ought to be affirmed with costs. It has been suggested, that this case is of great importance to the packet ship interest. It may be so. But in my opinion it is quite as important to the shipping interest. And if packet owners could, under circumstances like the present, escape from responsibility for like losses, it would be in the highest degree mischievous to the best interests of trade and navigation. No honorable merchant, tolerably attentive to his own interest, ought to be willing to risk his goods upon any voyage, unless he can have some adequate security against losses of so serious a nature. It would be to hold out to packet masters a premium for indifference, or carelessness, or want of vigilance in protecting the shipments confided to their care. I cannot but deem every relaxation of the common law in relation to the duties and responsibilities of the owners of carrier ships to be founded in bad policy, and detrimental to the general interests of commerce.

The decree of the district court is affirmed, with costs.

---

## Case No. 11,658.

REESIDE v. WALKER.

[See Case No. 11,656.]

---

REEVES (BLANCHARD v.). See Case No. 1,515.

---

## Case No. 11,659.

REEVES et al. v. The CONSTITUTION.

[Gilp. 579.] [1]

District Court, E. D. Pennsylvania. Sept. 28, 1835.

BAILMENT — HIRER — USE — SHIPPING — DAMAGES FROM INJURY—COLLISION.

1. A hirer, having charge of the property of another, is answerable for an injury which is

[1] [Reported by Henry D. Gilpin, Esq.]

caused by the omission of that care which a man of common prudence would have taken in his own concerns.

[Cited in Adams v. Cost, 62 Ind. 270.]

2. An owner of property let out to hire, is not entitled to indemnity for an injury it may sustain in the service in which it is used, unless such injury is caused by an abuse of it, or by such negligence as brings responsibility upon the hirer.

3. Where a steamboat was hired for the purpose of towing a vessel, to which she was fastened, and both were under the direction of a licensed pilot, the owner of the steamboat is not entitled to damages on account of injury sustained in the course of the navigation, and not caused by undue negligence of the pilot.

[Cited in Boyer v. The Wisconsin and The Hector, Case No. 1,756; The Express, 46 Fed. 864.]

4. Where two vessels run foul of each other, without blame on the part of either, the loss must be borne by that on which it falls; if both are to blame it must be apportioned between them; if it is by the fault of one, that must make full compensation.

[Cited in The Rival, Case No. 11,867; The Moxey, Id. 9,894; The Bay State, Id. 1,-148; Foster v. The Miranda, Id. 4,977; Waring v. Clarke, 5 How. (46 U. S.) 503.]

On the 7th August, 1835, the steamboat William Wray, belonging to the libellants [Josiah Reeves and Isaiah Toy] was employed in towing the ship Constitution, to which she was fastened, up the river Delaware. There was a licensed pilot on board of the ship, under whose directions both vessels were steered. In the course of the passage, they came in contact with a schooner, sailing on the river, by reason of which the steamboat sustained considerable injury, and the libellants now claim compensation and indemnity for this damage.

Lex & Gerhard, for libellants.
Mr. Chester, for respondent.

The counsel for the respondent offered the deposition of the pilot in evidence, which was objected to by the counsel for the libellants, who cited 1 Starkie, Ev. 110; 3 Starkie, Ev. 1732; Morish v. Foote, 2 Moore, C. P. 508; Cuthbert v. Gostling, 3 Camp. 515.

Judge HOPKINSON directed the deposition to be read; observing, that if, on a further examination, the objection to it should be found to be good, it would be laid aside in the decision of the cause.

Mr. Lex, for libellants: This is a case of bailment. The owners of the ship are answerable for the want of skill or care in the pilot, although he is not chosen or appointed by them. Bussy v. Donaldson, 4 Dall. 206.

Mr. Chester, for respondent: The ship Constitution, at the time of the accident which occasioned the damage, was in the hands and under the government of a licensed pilot, in the river Delaware. There was no fault, negligence, or ignorance on his part by which the harm was done. If it were otherwise the owners of the ship are not answerable for it. The pilot is not their agent, but an officer of the port, into whose